# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

No. 1D2022-3034

———————————————————

HUNTER SMITH,

    Petitioner,

v.

STATE OF FLORIDA,

    Respondent.

———————————————————

Petition for Writ of Prohibition—Original Jurisdiction.


June 19, 2024


TANENBAUM, J.

Currently pending in the Fourteenth Judicial Circuit Court for Bay County is a charge against Hunter Smith for second-degree murder with a firearm. This charge came after he shot and killed the deceased in a motel room where Smith and others were doing drugs. Smith asks this court to intervene by extraordinary writ to prevent the circuit court from allowing the prosecution of that charge to proceed. As Smith puts it, he is entitled to self-defense immunity under section 776.012(2), Florida Statutes (2020). We agree, and the writ shall issue. *See Boston v. State*, 326 So. 3d 673, 677 (Fla. 2021) (providing that "a defendant who avails him or herself to a *pretrial* immunity hearing and who believes legal error was committed at the *pretrial* immunity hearing may still seek relief by filing a petition for a writ of prohibition"); *Tsavaris v.*

*Scruggs*, 360 So. 2d 745, 747 (Fla. 1977) (approving appellate use of prohibition to enforce statutory immunity against criminal prosecution).

Smith filed a motion to dismiss based on his immunity claim, and the circuit court held an evidentiary hearing. In denying the motion, the circuit court made the following findings, which the parties do not seem to dispute. The incident occurred in a motel room where Smith went to sell drugs. Several of the room's occupants were smoking methamphetamine and hanging out. After the sale concluded, Smith remained in the room and smoked roxy pressed with fentanyl. Eventually, Smith passed out on the couch. After coming to, Smith heard his girlfriend (who was not present in the room) may have cheated on him, so he pulled out a gun from a pouch he had on him. Someone who was present at the time testified at the hearing that she feared for her life and asked Smith to leave the motel room. Smith then put the gun away.

It was at this point, though, that the deceased confronted Smith about the gun Smith had just restowed in its pouch. The deceased was so bold as to demand that Smith hand over the gun; otherwise, the deceased threatened, he would take it. This confrontation escalated to the point where the deceased punched Smith in the face, breaking and knocking off the glasses Smith was wearing. The deceased threw more punches as the two men moved to the corner of the motel room.

According to the circuit court, Smith was pressed up behind the inward-facing door to the room and had no reasonable means of escape. Smith at this point asked the deceased to stop, crouched down, and used his left arm to protect his head from continued punching from behind by the deceased. Aware of the violent tendencies of the deceased, Smith pulled the gun from its pouch with his right hand, put it under his raised left arm, and fired eight shots into the torso of the deceased behind him. Smith then left the motel room and called the police.

The circuit court noted that, technically, the altercation was "a fist fight," but

> the circumstances facing [Smith] at the time—namely, the men's positioning in the room and [Smith's]

knowledge of the victim's violent nature—allows this Court to find that [Smith's] belief that the use of deadly force was required to prevent death or great bodily harm was reasonable.

This determination is unchallenged, and we accept it as true.

Based on this determination, Smith should be entitled to immunity from prosecution for the shooting death. Section 776.012(2) provides for the following:

A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. . . .

Because Smith used the force permitted by this statute, he was "justified in such conduct and is immune from criminal prosecution." § 776.032(1), Fla. Stat.

The circuit court nevertheless denied Smith's claim to immunity because "he was engaged in criminal activity at the time he used deadly force" and because he "was in a place he did not have a right to be at the time he used deadly force." The court appears to have misapplied the last sentence of subsection two (otherwise block-quoted above):

A person who uses or threatens to use deadly force in accordance with this subsection *does not have a duty to retreat and has the right to stand his or her ground* if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

§ 776.012(2), Fla. Stat. (emphasis supplied). The point of highlighting the text here is to emphasize the difference between the "self-defense" immunity allowed by these statutory provisions, on the one hand; and the entitlement to "stand your ground," not retreat, and use deadly force under certain circumstances, on the other. That Smith may have been engaged in a crime and may have

3

been in a place where he did not have a right to be just means that he *did* have a duty to retreat—if he reasonably could—before he could use deadly force to defend himself. According to the circuit court, he *did not* have a reasonable pathway of retreat, and we read section 776.012(2), under such circumstances, as then justifying Smith's conduct rather than obviating completely his right to use deadly force to defend himself against a threat of death or great bodily harm.

Indeed, the circuit court here found, in no uncertain terms, that Smith—huddled in a corner of the motel room behind the inward-opening door, shielding himself from the deceased's repeated punches—had "exhausted all reasonable means of escape." This quote is redolent of a different statute, which the circuit court also may have had in mind, and which we now address. Section 776.041, Florida Statutes, completely forecloses the justification and immunity we have been discussing for someone who "[i]nitially provokes the use or threatened use of force against himself or herself, *unless*:

> (a) Such force or threat of force is so great that the person reasonably believes that he or she is in imminent danger of death or great bodily harm *and* that he or she has exhausted *every reasonable means to escape such danger* other than the use or threatened use of force which is likely to cause death or great bodily harm to the assailant[.]

*Id.* (2)(a) (emphasis supplied).* The circuit court determined that Smith was the initial aggressor, and the evidence amply supported

---

* Immunity also is entirely foreclosed—but with no equivalent exception—for someone who was engaged in a "forcible felony" at the time. *Id.* (1). A "forcible felony" includes "aggravated assault" and "any other felony which involves the use or threat of physical force or violence against any individual." § 776.08, Fla. Stat. The circuit court determined that Smith's "display and pointing of the firearm likely constitute[d] . . . aggravated assault." The court, however, appears to have denied immunity in part based on Smith's supposed engagement in criminal activity and its mistaken reading of section 776.012(2), discussed above. At all

4

that conclusion. But as we already mentioned, the circuit court also found that both criteria set out in paragraph (a) had been met. *Cf. State v. Floyd*, 186 So. 3d 1013, 1021 (Fla. 2016) (explaining that the standard jury instruction that pertains to section 776.041(2)(a) "accurately communicate[s] the law to the jury" as an exception the initial aggressor may use to claim immunity). Section 776.041, in turn, does not foreclose Smith's entitlement to immunity.

Section 776.032(4), Florida Statutes, provides that, "[i]n a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the [State] to overcome the immunity." Smith presented a prima facie case, and the State failed to meet its burden to overcome Smith's entitlement to immunity. We grant his petition for relief. The circuit court may not proceed further in case number 2021-CF-2771 on the State's pending charge, which should be dismissed. Smith must be released from detention on that charge immediately.

Writ ISSUED.

ROBERTS and LONG, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

John D. Middleton and Kyle Macomber of Middleton & Middleton, P.A., Melrose, for Petitioner.

_____

events, there is insufficient evidence to support a finding that Smith—at the time the deceased attacked him—continued to be engaged in a forcible felony, given that Smith had already put the gun back in the pouch. We conclude on this record that the foreclosure set out in section 776.041(1) does not apply here.

Ashley Moody, Attorney General, Michael Schaub, Assistant Attorney General, Tallahassee, for Respondent.